ABE JOHNSON v. THE STATE.

No. 6729. Decided March 8, 1922.

Murder—Sufficiency of the Evidence—Death Penalty.

Where, upon trial of murder, inflicting the death penalty, the evidence sustained the conviction, there was no reversible error.

Appeal from the District Court of Liberty. Tried below before the Honorable J. L. Manry.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

No brief on file for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was indicted in Polk County for the offense of murder. A trial there resulted in a hung jury. The judge of his own motion then transferred the case to Liberty County, and upon trial there a conviction resulted, the penalty being assessed at death.

No bills of exception are brought forward in the record. The only question subject to review is the sufficiency of the evidence to support the verdict. Appellant and deceased were both employees of the Saner-Ragley Lumber Company. Appellant was foreman of a repair gang working on the tram railroad connected with the mill. Deceased was mill foreman. R. M. Eagle was superintendent of the entire plant, having general supervision of the mill, tram railroad, timber and everything in connection with the plant. The homicide occurred on Monday morning. The mill proper had been shut down for a few days on account of some breakdown and in making repairs it was

necessary to do some concrete mixing. On Sunday deceased needed some additional shovels for this work and at the direction of Eagle had sent one of his hands to the railroad tool house and gotten two shovels. On Monday morning when appellant started his gang to work he missed the shovels and was told by one of his hands that someone had come to the tool hose on Sunday and gotten them. It is not made to appear from the record that appellant at this time knew of the superintendent's authorization of the deceased to get the shovels. When appellant came to the mill on Monday morning looking for them deceased told him he had the shovels and needed them about the repair work so the mill could be started up. Appellant insisted that he needed the shovels as he had five men and only three shovels. Deceased told him to send his two extra men to the mill and he would give them work there during the day, but appellant declined to do this. This conversation occurred on the outside of the mill and was heard by several witnesses, all of whom testified that at the time neither of the parties appeared to be mad, except one who says appellant seemed to be out of humor about the shovels. Both appellant and deceased went from the point where the conversation first occurred under the mill and several witnesses say the next thing that attracted their attention was appellant saying, "yip, yip," and upon looking they saw appellant with his knife open advancing on deceased who was backing away. Deceased backed ten or twelve feet with appellant pursuing him with the drawn knife. Mr. Eagle, the superintendent, did not hear the conversation between the two with reference to the shovels, but when he appeared upon the scene he saw deceased backing away from appellant who was following him up with his knife drawn. Mr. Eagle says that he heard deceased say to appellant, "Yonder comes the superintendent, let him settle it." Immediately after this remark from deceased they backed out of Eagle's sight behind some lumber under the mill. Eagle and all of the witnesses agree that at the time deceased was backing away from appellant deceased was unarmed. Eagle went immediately under the mill to where the parties were, but before he reached them deceased had secured a stick and Eagle saw it up-raised and the parties were clinched at that time. When Eagle got to them appellant had already cut deceased in two places and was in the act of striking again with the knife when the witness got hold of him and pulled him loose from deceased. Appellant had been struck on the head with the stick and was bleeding at this time. Deceased died four days after having received the wounds. In a dying declaration he stated that after they went under the mill house he again told appellant to send the extra hands up to the mill and he would give them work during the day, but that appellant refused to do this and stated he would turn in the time of the hands and would also report him (deceased) to the office; whereupon deceased told appellant that "he could say too much about that." He claims that at this time appellant drew his knife and advanced upon him and that he (deceased)

retreated and got hold of a stick, but that appellant closed in on him and was too close for him to use the stick with any effect or prevent appellant from cutting him. Appellant claims that deceased was the aggressor. That he secured the stick and advanced upon him (apellant) and struck him with the stick three or four times over the head before he (appellant) ever cut or attempted to cut deceased.

The foregoing is substantially all of the evidence introduced upon the trial. The issue of fact was submitted to the jury in an appropriate charge on self-defense and the jury declined to accept appellant's version. The fact that appellant was not supported in his statement by any of the eyewitnesses but that all of them put appellant in the wrong as being the aggressor in the difficulty was his misfortune.

While the jury inflicted the severest penalty known to the law, yet we are unwilling to say they were unauthorized in doing so. They saw the witnesses and heard them testify and were justified in reaching the conclusion that appellant became angry because the shovels had been removed from the tool house and that notwithstanding deceased had appealed to the superintendent who was approaching to settle the matter as between them that appellant declined to do so and pursued deceased and killed him for no other reason than appears from the record. Under this state of facts we do not feel disposed, nor would we be authorized, to disturb the verdict of the jury.

The judgment of the trial court is affirmed.

*Affirmed.*